**Ralph VALVANO, Donald Leroland, and Jonathan Williams, individually and on behalf of all other persons similarly situated, Plaintiffs,**

**v.**

**George F. McGRATH, Commissioner of Correction for the City of New York; John V. Lindsay, Mayor, City of New York; John P. Kennedy, Warden, Queens House of Detention for Men; Albert Ossakow, Deputy Warden, Queens House of Detention for Men; individually and in their official capacities, Defendants.**

70–Civ.–1390.

United States District Court,
E. D. New York.

Dec. 8, 1970.

Supplemental Order Feb. 1, 1971.

Amended Order Feb. 17, 1971.

Milton Adler, The Legal Aid Society, New York City, for plaintiffs; by William E. Hellerstein, William A. Nelson, Joel Berger, Richard Levy, Barbara Shapiro, New York City, of counsel.

J. Lee Rankin, Corp. Counsel, New York City, for defendants; Leonard Bernikow, Irwin Herzog, Victor Muskin, Jay Kranis, Asst. Corp. Counsels, George Roberts, Director of Legal Affairs, Dept. of Correction, New York City, all of counsel.

Biaggi, Ehrlich & Lang, New York City, for Correction Officers' Benevolent Society, for amicus curiae; by Bernard G. Ehrlich, Gordon Lang, New York City, of counsel.

## INTERIM FINDINGS AND ORDER

JUDD, District Judge.

In this civil rights action by inmates of the Queens House of Detention for Men (QHD), plaintiffs seek an injunction against the use of violence by Correction Officers, and other injunctive relief. The court has heard testimony in relation to plaintiffs' motion for a preliminary injunction and in relation to the maintenance of the case as a class action, on November 20, 24 and 25 and December 1, 2, 3, 7 and 8, 1970, in addition to a conference with counsel on November 30, 1970.

On the basis of the evidence thus far heard, the court finds that:

1. The plaintiffs from a period prior to October 1, 1970 were and still are inmates of the Queens House of Detention for Men.

2. QHD is an institution maintained by the Department of Correction of the City of New York for the custody of male persons awaiting grand jury action, trial or sentence, and for a limited number of sentenced prisoners.

3. The defendants each occupy the official position set forth in the caption, except that Albert Ossakow is now Acting Warden of QHD.

4. Queens House of Detention for Men is a relatively modern institution. Prior to the disturbance of October 2, 1970, it had facilities and equipment for the custody, medical and dental care, recreation and certain education of the persons intended to be confined there. The QHD regulations accord substantial privileges to the inmates, and the Warden had given consideration to any grievances presented to him by the inmates. However, the institution was substantially overcrowded and understaffed.

5. On October 2, 1970, some of the inmates took control of the second through the eighth floors of the building, excluded the Correction Officers from these floors, and destroyed commissary, dental, library, medical and other equipment in the building. The inmates remained in possession of the building through October 3, 1970.

6. On Sunday, October 4, 1970, the Correction Officers, with reinforcements from other institutions in the City, retook control of the building, using force against the inmates where necessary. Some of the inmates had fashioned weapons which were capable of causing serious injury.

7. There is enough evidence to create a substantial issue as to whether unresisting inmates were beaten by Correction Officers on October 4, 1970. It is not necessary for present purposes to determine the circumstances or extent of any improper use of force.

8. On October 13, 1970, defendant Ossakow caused to be read to all Correction Officers in QHD the terms of the departmental regulation (Rule 5.12) restricting the use of force against inmates.

9. Any instances of improper use of force after October 13 have been sufficiently few to leave the court uncertain whether plaintiffs can ultimately establish a right to enjoin the use of violence against inmates in general by Correction Officers.

10. Inmates who have given statements to the plaintiffs' attorneys or have testified as witnesses for the plaintiffs, have expressed genuine fears concerning reprisals against them by Correction Officers, either in QHD or in other institutions to which these inmates may subsequently be transferred.

11. Inmates who have given statements to the defendants or their attorneys or have testified as witnesses for the defendants have expressed genuine fears concerning reprisals against them by other inmates either in QHD or in other institutions to which they may be transferred.

12. There is no substantial evidence of any confiscation or destruction of inmates' personal property after about October 6, 1970.

13. There is no substantial evidence of any inadequacy in the diet of inmates, but the diet for inmates in segregation seems not to have been approved by the attending physician.

14. There is no substantial evidence of any refusal of reasonable medical care to any inmate after about October 7, 1970.

15. Thomas Hines, an inmate of QHD, died on October 5, 1970 of a massive dose of darvon, which appears to have been injected several hours after Correction Officers had placed him in his cell, and prior to any search of the cell.

16. The medical examiners found marks on Hines' body which may or may not have been caused by blows, but reported that any traumatic injuries were insufficient to have caused his death.

17. The action of the inmates on October 2 and 3, 1970 was not caused by any action or omission of defendants McGrath, Kennedy or Ossakow, but was based in large part on the frustration of legal and judicial delays which had prolonged the "temporary" incarceration of defendants awaiting disposition of their cases, and was triggered by knowledge of similar outbreaks in other city penal institutions.

18. Since October 5, 1970, the number of persons confined at QHD has been reduced by the release of a number of inmates on bail.

19. Up to the present date, no disciplinary proceedings have been instituted against any Correction Officer with respect to any alleged beatings of inmates.

20. The Correction Department's investigation of the riots is being conducted by Officers one of whom is charged by plaintiffs with improper use of force.

21. Certain of the inmates have been indicted for acts alleged to have been committed in QHD during or subsequent to the disturbance of October 2 to 4, 1970.

22. Representatives of the Queens County District Attorney's office were present at the first hearing, held at the Queens House of Detention for Men on November 20, 1970.

23. Some witnesses for plaintiffs have exercised their rights under the Fifth Amendment to the United States Constitution, as a reason for not fully answering all the questions put to them by counsel in this case.

24. Further exploration of exactly what took place in the period after the disturbance would be lengthy, and is both unnecessary and impractical at this time, in view of:

(a) The court's finding that plaintiffs' right to a general final injunction is uncertain;

(b) The extent to which fears of reprisal or of self-incrimination limit the testimony of inmates;

(c) The possibility that some of the same issues may be the subject of testimony in state court criminal trials of inmates and in administrative disciplinary hearings of Correction Officers; and

(d) The amount of court time which would be required to hear evidence corroborating or contradicting the testimony of witnesses already heard, without the usual help of pre-trial discovery.

25. If the restraining provisions of today's order are effective, plaintiffs and the class they seek to represent are unlikely to suffer substantial hardship from the denial of a preliminary injunction, even if they are ultimately successful on the merits.

26. The evidence of mutual interference with witnesses, including those claimed to be members of the plaintiff class, is sufficiently strong to justify the burdens which the following order puts on the parties pending the determination of the issues in the case.

The court reserves decision on the question whether the action shall be maintained as a class action, and whether and what notice thereof shall be given, pending the receipt of memoranda of law and the taking of any further testimony which the court may receive on that subject after considering such memoranda.

■ On the basis of the foregoing findings, and after considering the parties' offers of further proof, the court ORDERS:

I. That the defendants take all reasonable steps to assure the safety of all inmates who have given statements to representatives of either side in this action, or have been interviewed by representatives of either side or have testified in court in this proceeding, or who may testify in any other action or proceeding arising out of the disturbance of October 2 to 4, 1970 or out of this action.

II. That the defendants and all Correction Officers and other personnel in Queens House of Detention for Men are restrained until further order of the court from making any threats against any person who has been interviewed or has given a statement or testified as set forth above.

III. That all inmates of Queens House of Detention for Men are restrained until further order of the court from making any threats against any person who has been interviewed or has given a statement or testified as set forth above.

IV. That the defendants and all persons employed at the Queens House of Detention for Men or acting in concert with them are restrained until further order of the court from forwarding any information to any other penal institution or employee thereof concerning any testimony given in court by any inmate, or any involvement in this law suit or the making of any charges against any Correction Officer.

V. That the Board of Corrections of the City of New York is requested

(1) to undertake a program of observation of the handling of inmates at Queens House of Detention for Men, after consultation with plaintiffs' counsel and to report to the Commissioner of Correction, who is further requested to furnish a copy of such report to the Court and the parties no later than January 15, 1971, and

(2) to arrange for observers to attend hearings of disciplinary proceedings concerning QHD Correction Officers arising out of the subject matter of the complaint.

VI. That the Warden or Acting Warden of QHD furnish the court and plaintiffs' counsel within ten days hereafter and every two weeks thereafter a list of any disciplinary proceedings instituted against Correction Officers or inmates based on any matters described in the complaint.

VII. That defendants Kennedy and Ossakow continue to permit representatives of the Legal Aid Society free access to inmates who request to see them in connection with this case, and that no defendant, defense attorney or Correction Department employee shall question or talk to any inmate who has requested an interview with the Legal Aid Society concerning the subject matter of said interview unless a Legal Aid Society attorney is present.

VIII. That the temporary restraining orders issued on November 9 and 19, 1970 are hereby dissolved.

IX. That defendant Ossakow within 36 hours after the filing hereof shall deliver to every person employed in Queens House of Detention for Men copies at least of ordering paragraphs I, II, III, IV and VII hereof, and that he may deliver copies of paragraph III hereof to the inmates and omit the balance of the document, if he chooses.

X. That the motion for a preliminary injunction is denied except as set forth above.

XI. That in the event that the New York City Board of Corrections declines to proceed as requested by the court, plaintiffs may apply to the court for other means of monitoring the conditions in the institution.

XII. That any party may apply to the court on two days notice for modification, interpretation or enforcement of any of the provisions of this order.

### SUPPLEMENTAL ORDER

█  Plaintiffs having applied to this Court for permission to maintain this suit as a class action and for an order directing that all members of the class be notified of this action, and the Court having determined that the action may be maintained as a class action under F.R.C.P. 23(b) (2), and that notice of the pendency of the action must be given to all members of the class: it is hereby

ORDERED, that this action shall be maintained as a class action pursuant to Rule 23(b) (2) of the Federal Rules of Civil Procedure: and it is further

ORDERED, that notice shall be given to each person incarcerated in the Queens House of Detention for Men during the pendency of this action by placing a written copy of the following notice in a plainly visible public place on each tier of the Queens House of Detention for Men on which inmates are housed; and by furnishing a copy to each present inmate within one week after the service of a copy of this Order on the Corporation Counsel and to each new inmate received during the pendency of this action within three days after his reception at the institution.

### NOTICE TO ALL PERSONS CONFINED IN THE QUEENS HOUSE OF DETENTION FOR MEN

The United States District Court has determined that this action is a class action brought on behalf of all persons incarcerated in the Queens House of Detention for Men.

The Complaint charges that the inmates of QHD have been deprived of their rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amend-

ments of the United States Constitution. The following allegations are made:

1. Inmates have been subjected to beatings, humiliations, and threats of beatings by Prison Officials since October 4, 1970.

2. Inmates who were injured were denied prompt medical care.

3. Inmates' personal property has been unlawfully confiscated by prison officials.

4. Inmates are subjected to the following conditions and practices: strip-searches; interference with the right to send and receive uncensored and confidential mail; curtailment of visits, as to frequency and from whom received; excessive lock-in; and unsanitary conditions.

5. Disciplinary proceedings against inmates are conducted without basic procedural safeguards.

6. Restricted diets and the denial of basic comforts such as bedding and toilet articles are improperly imposed as disciplinary punishment.

7. Non-convicted inmates are subjected to conditions which violate their rights as persons who are presumed innocent.

8. Witnesses in this law suit are being intimidated by prison officials and by the office of the Queens District Attorney.

The suit seeks an injunction against the continuance of these alleged conditions and practices.

The District Court has not determined whether or not the charges are true or what final relief, if any, the plaintiffs are entitled to. The Court has, however, issued an Interim Order which includes provisions that:

1. The defendants shall protect all inmates who have given statements for either side or who have testified or may testify in Court, and

2. No inmate or Correction Officer shall make any threats against any person who has been interviewed or has given a statement or testified in the suit.

The plaintiffs are represented by attorneys William C. Hellerstein, William A. Nelson and Richard A. Levy, The Legal Aid Society, 119 Fifth Avenue, New York, New York 10003. Any member of the class who so desires may apply to the Court to intervene in this action either *pro se* or by an attorney of his own selection. If he does not so intervene his interests will be represented by the present plaintiffs and their attorneys.

Letters from inmates to counsel for either side or to the District Court concerning this suit will be sent out unopened and should be delivered for mailing in sealed envelopes. Inmates who do not wish to write directly to counsel may address the envelope to Hon. Orrin G. Judd, United States District Courthouse, 225 Cadman Plaza East, Brooklyn, New York 11201, indicating at the outset of the letter the intended recipient.

And it is further

ORDERED, that the Legal Aid Society reproduce the necessary number of copies of the above notice and deliver them to the Warden of the Queens House of Detention for Men at the time of service of this order, for posting and distribution; and it is further

ORDERED, that the Warden of the Queens House of Detention for Men post and distribute copies of the above notice as set forth above, and replace any posted notices which may be lost or destroyed; and it is further

ORDERED, that defendants and their subordinates shall not open, read, censor, or withhold any postal communications between members of the class and counsel or this Court.

### ORDER
### AMENDING ORDER OF
### February 1, 1971

After hearing counsel in Chambers this day on oral application by the City defendants for amendment, it is

ORDERED, (1) that the final paragraph of the Order dated February 1, 1971 be amended to provide that incoming mail from counsel to members of the class may be opened and inspected to determine whether any contraband is contained, provided that the envelopes are stamped that the contents have not been read; and

(2) That the time for posting and delivering the notice specified in the Order is extended to February 22, 1971.